IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| STEPHANIE M. FISHWICK, <br><br> Plaintiff, <br><br> v. <br><br> PORTFOLIO RECOVERY ASSOCIATES, LLC and TRANS UNION, LLC, <br><br> Defendants. | Civil Action No. 2:23-cv-420 |

**COMPLAINT**

Plaintiff Stephanie M. Fishwick, by Counsel, files this Complaint against Defendants Portfolio Recovery Associates, LLC ("PRA") and Trans Union, LLC ("Trans Union"). For her claims, Ms. Fishwick alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

2. In 1977, Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

3. The FDCPA carries out its purpose by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices. §§ 1692b–1692j.

4. One prohibited debt-collection practice is using false, deceptive, or misleading representations while collecting or attempting to collect a debt. 15 U.S.C. § 1692e.

5. PRA violated this provision by repeatedly attempting to collect a debt from Ms. Fishwick that she did not owe.

6. And when Ms. Fishwick disputed the inaccurate information with Trans Union, PRA verified that its previous reporting—that Ms. Fishwick owed an outstanding balance on the account—was accurate.

7. PRA also accessed Ms. Fishwick's credit reports—which was not allowed because she did not owe PRA any money.

8. As a result, PRA's conduct also violated the FCRA, 15 U.S.C. §§ 1681b(f), 1681s-2(b).

9. Ms. Fishwick also alleges claims against Trans Union under the FCRA, 15 U.S.C. § 1681e(b) for failing to ensure that her credit reports were as accurate as possible and 15 U.S.C. § 1681i for failing to investigate her credit dispute.

## JURISDICTION AND VENUE

10. This Court has jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 168lp, and 15 U.S.C. § 1692k(d).

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because PRA resides in this District and Division.

## PARTIES

12. Ms. Fishwick is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

13. PRA is Delaware corporation with its principal place of business in Norfolk, Virginia. It is a furnisher governed by the FCRA and a "debt collector" as defined by 15 U.S.C. § 1692a(6).

14. Trans Union is a foreign limited liability company authorized to do business in Virginia. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

15. In November 2022, Ms. Fishwick applied for a mortgage.

16. During that process, she learned that PRA was reporting a collection account for a defaulted PayPal credit card in her credit file.

17. This information was inaccurate.

18. Ms. Fishwick learned that the account had been opened using her maiden name with a Falls Church address.

19. But Ms. Fishwick stopped using her maiden name in 2009 and has not lived in the Northern Virginia area since 2005—well before the PayPal account was opened.

20. Because of PRA's inaccurate reporting, Ms. Fishwick's mortgage application was denied.

21. Ms. Fishwick immediately placed a fraud alert on her credit files and disputed the inaccurate information with PRA and explained that this account did not belong to her.

22. But PRA refused to remove the inaccurate information from Ms. Fishwick's credit reports or stop its collection attempts.

23. In fact, PRA filed a collection action in Fairfax County General District Court in February 2023 stating that Ms. Fishwick owed $1,350.94 on the defaulted PayPal credit card account.

24. This statement was false.

25. On or about April 4, 2023, Ms. Fishwick disputed the debt again with PRA, but, again, PRA indicated it "verified" the debt as belonging to Ms. Fishwick.

26. Ms. Fishwick also disputed PRA's inaccurate credit reporting with Trans Union in April 2023. Her dispute explained that the account was clearly fraudulent because it was opened with a name she had not used since 2009 and using an address in a location she hadn't lived in for more than 15 years.

27. Upon information and belief, Trans Union forwarded Ms. Fishwick's disputes to PRA.

28. PRA and Trans Union failed to adequately investigate Ms. Fishwick's dispute. Instead, PRA told Trans Union that the information was accurate and should remain on Ms. Fishwick's report.

29. Trans Union relied on PRA's response and did not conduct any other investigation into Ms. Fishwick's dispute.

30. As a result, the inaccurate PRA collection account remained on Ms. Fishwick's credit report.

31. PRA also requested Ms. Fishwick's Trans Union credit report several times after the Court's order, including on June 10, 2022, June 14, 2022, January 24, 2023, and May 15, 2023.

32. PRA requested Ms. Fishwick's credit reports even though she did not have an account with them or any other permissible purpose to obtain her credit reports.

33. As a result of Defendants' conduct, Ms. Fishwick has suffered significant actual damages, including a decreased credit score. This ordeal has also caused her to suffer emotional distress, including stress, anxiety, and frustration.

*Defendants' FCRA Violations Were Willful*

34. As a standard practice, Trans Union does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the furnisher despite

several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

35. Upon information and belief and consistent with its standard policies and procedures, Trans Union automatically generated its "investigation" results once PRA verified the status of the account, and it did not take any additional actions to verify the accuracy of the information that the furnishers provided.

36. Instead, Trans Union blindly accepted the furnishers' version of the facts and continued to report the inaccurate, derogatory information on Ms. Fishwick's credit reports.

37. Trans Union continues the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that it fails to conduct a reasonable investigation under the FCRA.

38. Trans Union does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

39. As a result, at all times relevant to this Complaint, Trans Union's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have

been known, by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

40. PRA's processing of consumer disputes was also willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, PRA acted in accordance with PRA's intended procedures. In addition, PRA prioritizes processing disputes quickly over making sure that the disputes are investigated thoroughly and accurately.

41. In addition, the willfulness of PRA's FCRA violations can be established by, for example:

    a. Congress enacted the FCRA in 1970, and PRA has had over 50 years to become compliant;

    b. PRA is a corporation with access to legal advice through its own general counsel and outside litigation counsel. Yet, there is not contemporaneous evidence that PRA determined that its conduct was lawful;

    c. PRA knew, or had reason to know, that its conduct was inconsistent with the FCRA's plain language, regulatory guidance, and the relevant case law;

    d. PRA voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading of the statute that was merely careless;

    e. PRA's FCRA violations were repeated and systematic;

    f. PRA had substantial documentation available to it that apprised it of its duties under the FCRA but still chose not to comply with the statute; and

    g. PRA had notice of its defective dispute processing procedures through internal audits and litigation, but chose not to meaningfully change its policies and procedures to comply with the FCRA.

42. Finally, PRA's violations of the FCRA over the impermissible access of Ms. Fishwick's consumer reports were willful. The FCRA's requirements for the receipt of consumer reports only for an enumerated permissible purpose are clear and well established in the statute.

43. PRA knew of the FCRA's requirements and, despite this knowledge, refused to follow them. Thus, its violations of the statute were willful.

**COUNT ONE:**
**VIOLATION OF FDCPA, 15 U.S.C. § 1692e**
**(DEFENDANT PRA)**

44. Ms. Fishwick incorporates each of the preceding allegations.

45. PRA violated § 1692e of the FDCPA by using any false, deceptive, or misleading representation or means in connection with the collection of any debt including, but not limited to, attempting to collect debts from Ms. Fishwick that she did not owe, which violated § 1692e, reporting to the consumer reporting agencies that she owed an outstanding balance on the accounts, which violated § 1692e(2)(A) and § 1692e(8), and filing a warrant in debt stating that she was legally obligated on the debt, which violated § 1692e(2)(A).

46. Ms. Fishwick suffered actual damages because of PRA's violations of § 1692e, including credit denials, a reduced credit score, embarrassment, humiliation, and other emotional distress.

47. Ms. Fishwick may recover actual damages, statutory damages, her reasonable attorney's fees, and costs under 15 U.S.C. § 1692k.

**COUNT TWO:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(DEFENDANT PRA)**

48. Ms. Fishwick incorporates each of the preceding allegations.

49. On one or more occasion in the past two years, PRA violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to properly investigate Ms. Fishwick's disputes.

50. When Ms. Fishwick disputed the account with Trans Union, PRA used an automated dispute system named "e-Oscar," which the credit industry adopted to process consumer dispute to the consumer reporting agencies.

51. When the consumer reporting agencies receive consumer disputes, they (usually by an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

52. Upon information and belief, PRA has elected to receive consumer disputes from the consumer reporting agencies by ACDV form under 15 U.S.C. § 1681i(a).

53. Upon information and belief, Trans Union, forwarded Ms. Fishwick's dispute to PRA by ACDV.

54. PRA understood the nature of Ms. Fishwick's disputes when it received the ACDV form.

55. Upon information and belief, when PRA received the ACDV form containing Ms. Fishwick's disputes, it followed a standard and systemically unlawful process where it only reviewed its own internal computer screen for the account and repeated back the same information to e-Oscar that it was already reporting before the dispute.

56. Upon information and belief, when PRA receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is accurate.

57. Because of PRA's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Ms. Fishwick suffered actual damages, including, but not limited to, a decreased credit score, embarrassment, humiliation, and other emotional distress.

58. PRA's violations of § 1681s-2(b)(1)(A) were willful, rendering it liable to Ms. Fishwick for punitive damages under 15 U.S.C. § 1681n. In the alternative, PRA was negligent, entitling Ms. Fishwick to recover under 15 U.S.C. §1681o.

59. Ms. Fishwick may recover actual damages, statutory damages, costs, and attorney's fees from PRA under 15 U.S.C. §§ 1681n and 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(DEFENDANT PRA)**

60. Ms. Fishwick incorporates each of the preceding allegations.

61. On one or more occasions in the past two years, PRA violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

62. As Ms. Fishwick detailed in the previous Count, PRA has elected to use the e-Oscar system for its FCRA disputes received through the consumer reporting agencies.

63. PRA was aware of the meaning of the several dispute codes used by the consumer reporting agencies in e-Oscar.

64. PRA does not contend that the ACDV system is an inadequate means to receive FCRA disputes.

65. PRA understood Ms. Fishwick's disputes and that Ms. Fishwick claimed the information was inaccurate.

66. Because of PRA's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Ms. Fishwick suffered actual damages, including: a decreased credit score, embarrassment, humiliation, and other emotional distress.

67. PRA's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, PRA was negligent, entitling Ms. Fishwick to recover under 15 U.S.C. § 1681o.

68. Ms. Fishwick has a right to recover actual damages, statutory damages, costs, and attorney's fees from PRA under 15 U.S.C. §§ 1681n and 1681o.

## COUNT FOUR:
## VIOLATION OF FCRA, 15 U.S.C. §1681b(f)
## (DEFENDANT PRA)

69. Ms. Fishwick incorporates each of the preceding allegations.

70. PRA violated the FCRA, 15 U.S.C. §1681b(f) by obtaining and using Ms. Fishwick's consumer report without a permissible purpose to do so. For example, PRA impermissibly obtained a copy of Plaintiff's Trans Union's credit report on June 10, 2022, June 14, 2022, January 24, 2023, and May 15, 2023.

71. As a result of PRA's conduct, Ms. Fishwick suffered actual damages including violation of privacy and other emotional and mental distress.

72. PRA's conduct was willful, rendering it liable for punitive damages under 15 U.S.C. §1681n. In the alternative, it was negligent, entitling Ms. Fishwick to recover under 15 U.S.C. §1681o.

73. Ms. Fishwick may also recover actual damages, statutory damages, costs and attorneys' fees under 15 U.S.C. §1681n and §1681o.

## COUNT FIVE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
## (DEFENDANT TRANS UNION)

74. Ms. Fishwick incorporates each of the preceding allegations.

75. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparing Ms. Fishwick's credit reports and credit files.

76. Because of Trans Union's conduct, Ms. Fishwick suffered actual damages, including: credit damage, embarrassment, humiliation, and other emotional distress.

77. Trans Union's violations of § 1681e(b) were willful, rendering them liable to Ms. Fishwick for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Ms. Fishwick to recovery under 15 U.S.C. § 1681o.

## COUNT SIX:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
## (DEFENDANT TRANS UNION)

78. Ms. Fishwick incorporates each of the preceding allegations.

79. Trans Union violated multiple sections of § 1681i, including: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide PRA with all the relevant information about Ms. Fishwick's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Ms. Fishwick in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Ms. Fishwick's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

80. Because of Trans Union's violations of §1681i, Ms. Fishwick suffered actual damages, including: credit damage, embarrassment, humiliation, and other emotional distress.

81. Trans Union's violations of § 1681i were willful, rendering it liable to Ms. Fishwick for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15

U.S.C. § 1681n. In the alternative, Trans Union was negligent, entitling Ms. Fishwick to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Fishwick demands judgment for actual, statutory, and punitive damages against Defendants as pleaded above; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully Submitted,
**STEPHANIE M. FISHWICK**

By: __/s/ *Kristi C. Kelly*_____
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email:  kkelly@kellyguzzo.com
Email:  aguzzo@kellyguzzo.com
Email:  casey@kellyguzzo.com
Email: pat@kellyguzzo.com
*Counsel for Plaintiff*